NATIONAL DRESS MANUFACTURERS ASSOCIATION, INC., Plaintiff, v. UNITED ASSOCIATION OF DRESS MANUFACTURERS, INC., Defendant.

Supreme Court, New York County, April 23, 1934.

*Weil, Gotshal & Manges* [*Sylvan Gotshal* of counsel], for the plaintiff, for the motion.

*William Davis* for the defendant, opposed.

LEVY, J. This is a motion for an injunction *pendente lite* by an incorporated association of jobbers in the dress industry against the association of contractors in that trade. The jobbers are engaged in the wholesale distribution of ladies' garments. They furnish the material and designs to the contractors who perform the work at a stipulated price. In December, 1933, the two associations, acting for their respective members, entered into a collective agreement designed to establish harmony in the dress manufacturing industry, to provide a basis for equitable and fair business conduct and to insure payment of wages to labor according to the scale prescribed by the collective bargaining agreement with the trade union, together with the additional reasonable overhead and profit to the contractors.

Article VII of the agreement between the parties provides that all grievances shall be submitted to the managers of the respective associations for adjustment within three days, and in the event of the failure of the managers to agree, the matter in dispute shall be referred to the impartial chairman of the dress industry whose decision shall be final. The entire agreement was reached after long negotiations, with the aid of the chairman of the National Recovery Administration. It was conceived in the spirit of the NRA to encourage re-employment of labor at fair wages, and also fair remuneration to the contractors.

Early in April, 1934, the defendant threatened to order its members — of whom there are some 2,200 — to close their shops and cease to perform work for members of plaintiff's organization. This threat was evidently intended to coerce the plaintiff to redress defendant's grievances. The plaintiff thereupon invoked the machinery of arbitration, by submitting to the impartial chairman the question of the right of the defendant to issue such a stoppage order. His decision on the eighteenth day of April was to the effect that the order directed by the defendant to cease work was illegal and should be rescinded. Defendant has refused to abide by this determination on the ground that the matter should have been submitted in writing to the managers for adjudication and that their failure to agree was a condition precedent to the arbitrator's jurisdiction. This objection was also urged before the impartial chairman.

A reading of his decision would seem to dispose of the objection. He has ruled that the conduct of the defendant constitutes a " lockout " of the workers. In its collective agreement with the workers union it bound itself to prevent lockouts among its members, and it occurs to me he properly observes that " it would seem anomalous almost to the point of absurdity to hold that the very association

which binds itself to prevent lockouts among its members and agrees to put a stop to them, should be permitted to cause a general lockout by all its members by ordering it to be done." While an ordinary dispute involving grievances, and even a general dispute as to the interpretation of any portion of the contract, may require a prior submission to the managers for adjustment, the action of the defendant here does not give rise to a mere dispute but to a fiat on its part. In such a situation a preliminary complaint submitted to the managers would appear to be an idle ceremony and invite further delay. But the state of things does not brook any such delay. The enforced idleness of tens of thousands of workers, who are without fault and who find themselves between the upper and nether millstones, is a matter of grave public concern, more particularly in times such as these, and a very serious interference with the NRA program of re-employment.

Doubtless the contractors may have grievances. They complain of repeated unredressed breaches of the agreement by the plaintiff, of the long delays in the determination of matters before the impartial chairman, and particularly of secret violations of the wage agreement by compulsory rebates by contractors to members of the plaintiff. These violations, they contend, result in cutthroat competition among defendant's members and deprive them of a fair return in their undertakings. But these grievances are not irremediable and must yield to the larger interests of a group of perhaps 40,000 wage earners who are not merely innocent third parties, but to whom the very defendant is pledged by solemn agreement to prevent lockouts.

True, plaintiff's demand for an injunction is predicated upon the irreparable injury caused its members in that they are prevented from filling their seasonal orders. But when defendant retorts by alleging plaintiff's unclean hands, an issue might arise to sway the court to deny the injunction on condition of an immediate trial, to which defendant has consented. However, the interests of the workers and of the National Recovery program are so paramount that even a few days stoppage becomes of serious moment.

A temporary injunction must, therefore, be permitted, with this concession to defendant's grievances, that the cause shall be tried, after joinder of issue, at a reasonably early date. A public airing of the matters in difference must thus result in a determination which undoubtedly will be just to all the parties, without undue interference with the vital recovery program.

Motion granted. Settle order on two hours' notice with appropriate suggestions as to the amount of the undertaking and the date for trial.